## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| THANE INTERNATIONAL, INC., *et al.*, | ) | Case No. 15-12186 (KG) |
| | ) | (Jointly Administered) |
| Debtors in a Foreign Proceeding. | ) | |
| _____ | ) | |
| STANLEY JACOBS PRODUCTION, | ) | |
| LTD., a California corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 17-50476 (KG) |
| | ) | |
| 9472541 CANADA INC., a Canadian | ) | |
| corporation, d/b/a THANE INC.; | ) | |
| 9472550 CANADA INC., a Canadian | ) | |
| corporation, d/b/a THANE DIRECT | ) | |
| INC.; and 635427, INC., a Delaware | ) | |
| corporation, d/b/a THANE AMERICA | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | **Re: Adv. D.I. No. 32** |

<u>OPINION</u>

<u>INTRODUCTION</u>

The adversary proceeding is a peculiar one that presents the Court with an opportunity to discuss the fundamental elements of assumption of executory contracts under the Bankruptcy Code. In its simplest form, the issue before the Court is whether an executory contract that was neither affirmatively assumed nor rejected was included and assigned in a sale transaction.

On October 16, 2015, Bank of Montreal, as syndication agent and administrative agent for itself, National Bank of Canada and HSBC Bank of Canada as lenders (collectively, the "Senior Lenders") commenced a proceeding in Canada (the "Canadian Proceeding") under Canada's Bankruptcy and Insolvency Act against Thane International, Inc., Thane Direct, Inc., Thane Direct Company, Thane Direct Marketing Inc., West Coast Direct Marketing, Inc., Thane Direct Canada Inc. and TDG, Inc. (collectively, "Old Thane"). *See Bank of Montreal, et al. v. Thane Int'l Inc. et al.*, Case No. 15-11146-00CL. That same day, 9472541 Canada Inc., 9472550 Canada Inc. and 635427, Inc. (collectively, "New Thane") offered to purchase substantially all of Old Thane's assets (the "Purchase Agreement"). *Exhibit to Opening Brief Regarding Assignment of Production Agreement* ("Exhibit"), Adv. D.I. 32-1 at A146–47.[1] On October 25, 2015, Old Thane, through its Receiver, Richter Advisory Group ("Richter") (*id.* at A121–22, ¶ 5), commenced Chapter 15 proceedings in the Court. *Chapter 15 Petition for Recognition of Foreign Proceeding* ("Petition"), D.I. 1.[2] The Court entered an order approving the Purchase Agreement on December 1, 2015 (the "Sale Order") (D.I. 42), and the sale closed on December 18, 2015 (the "Closing"). Exhibit at A362.

Eight months after the Closing, Stanley Jacobs Productions, Ltd. ("SJPL") filed an action against New Thane in the United States District Court of the Central District of California (the "District Court") seeking the payment of alleged outstanding royalties

---

[1] 652134 Limited was also a buyer under the Purchase Agreement, but they are not a named defendant.

[2] References to "D.I." refer to the Chapter 15 docket, *In re Thane Int'l, Inc., et al.* (15-12186). References to "Adv. D.I." refer to this proceeding's docket.

under a production agreement between Old Thane and SJPL (the "Production Agreement"). *Complaint*, Adv. D.I. 3.[3] On October 14, 2016, New Thane filed a motion to dismiss due to SJPL's failure to "distinguish pre- and post-closing royalties" and failure to show that New Thane is "liable for pre-receivership or pre-closing royalties." Adv. D.I. 4 at p. 1. On December 6, 2016, the District Court denied New Thane's motion to dismiss citing Old Thane's failure to provide SJPL notice of the bankruptcy proceeding. Adv. D.I. 7 at pp. 7–9. On March 16, 2017, New Thane filed a motion for judgment on the pleadings, arguing that the Court is a better forum to interpret the terms of the Sale Order and associated orders, and to discern whether the Production Agreement was assumed by Old Thane and assigned to New Thane. Adv. D.I. 9 at pp. 11–12. On May 1, 2017, the District Court granted New Thane's motion in part and transferred the case to the Delaware District Court which then referred the case to the Court. *Order Regarding Motion for Judgment on the Pleadings* ("Transfer Order"), Adv. D.I. 12.[4]

"[T]he parties dispute whether the Sale Order assigned the Production Agreement at all[.]" *Id.* at p. 5. SJPL contends that the Sale Order effectuated assumption and assignment of the Production Agreement to New Thane and that New Thane's post-

---

[3] The Court obliges SJPL's request for judicial notice of the District Court proceedings, *Stanley Jacobs Productions, Ltd. v. 9272541 Canada Inc. et al.*, Case No. 2:16-cv-06223-MWF-JPR. *Plaintiff's Request for Judicial Notice in Support of Plaintiff's Regarding Opening Brief* ("Judicial Notice Request"), Adv. D.I. 35; *see* Fed. R. Evid. 201(b)(2) (highlighting judicial notice is appropriate when a fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[4] The District Court invited the District of Delaware to transfer the action back to the District Court after the Court ruled. *See* Transfer Order at p. 6. For the reasons which follow, the Court does not believe that it is necessary to transfer the action back to the District Court.

Closing course of conduct reinforces such a finding. *See generally Opening Brief Regarding Assignment of Production Agreement* (the "Motion"), Adv. D.I. 32; *Reply in Support of Opening Brief Regarding Assignment of Production Agreement* (the "Reply"), Adv. D.I. 34. New Thane argues that assumption and assignment did not occur because the "strictures" of 11 U.S.C. § 365 were not met and course of conduct cannot substitute. *See generally Opposition to Opening Brief Regarding Assignment of Production Agreement* (the "Opp."), Adv. D.I. 33.

For the reasons stated, the Court finds that Old Thane did not assume the Production Agreement and did not assign it to New Thane.

## FACTS

### Old Thane's Receivership

Old Thane sold consumer products through a combination of channels, such as direct-to-consumer sales and retail store sales. *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief*, D.I. 5 ¶ 7. Despite successes with products like the X-5 Steam Mop, Abdoer Twist and Abtronic, Old Thane experienced financial difficulties when television advertising and sales declined in the United States and Canada. *Id*. ¶¶ 13, 15. This sales downturn decimated Old Thane's revenues, leading to the initiation of a sale process. *Id*. ¶ 18. In May 2015, Old Thane entered into a letter of intent with certain senior lenders for the purchase of substantially all of Old Thane's assets (the "Purchase Transaction"). *Id*. In October 2015, the Senior Lenders brought an application to appoint a receiver to the Superior Court of Justice of Toronto, Ontario, Canada (the "Canadian Court"), which initiated the Canadian Proceeding. Opp. at p. 3. In accordance with

Canadian federal and provincial law, the Canadian Court entered an Appointment Order (the "Appointment Order"), as well as related Approval, Vesting and Distribution Order (the "Vesting Order" and, collectively with the Appointment Order, the "Receivership Orders"). *Id*. Richter was appointed as Receiver pursuant to the Appointment Order and was authorized to "sell or convey" Old Thane's assets. *Id*.

### Old Thane's Chapter 15

On October 25, 2015, Old Thane, through Richter, initiated Chapter 15 proceedings in the Court by filing the Petition. The following day, Richter filed a Petition for Recognition of the Canadian Proceeding as a foreign main proceeding pursuant to 11 U.S.C. § 1515, outlining Richter's intention to consummate the Purchase Agreement. D.I. 5. On December 1, 2015, the Court entered a Recognition Order. D.I. 41.

*a. The Purchase Agreement and Sale Order*

On October 27, 2015, Richter filed a motion with the Court for an order "(i) recognizing and enforcing the Receivership Orders, (ii) authorizing the sale of substantially all of Old Thane's assets, and (iii) authorizing the assignment of certain executory contracts and leases (the 'Sale Motion')." Opp. at p. 4; *see* D.I. 22. The Purchase Agreement details the terms of the sale. *See* Exhibit at A146. The Purchase Agreement does not identify all contracts and related liabilities to be assumed by New Thane (Opp. at p. 5), but it does provide that New Thane will "assume the obligations relating to those Contracts being purchased by it in accordance with Schedule 1 and Schedule 2." Exhibit at A155. Neither Schedule 1 nor 2 reference the Production Agreement. Schedule 1 does, however, note that the assets sold by Old Thane include "Other Assets," which are in part

defined as "Debtor Contracts, equipment, inventory and Accounts Receivable, as applicable." *Id*. at A174.

On December 1, 2015, the Court entered the Sale Order which approved the Sale Motion and effectuated the Purchase Agreement. Closing occurred on December 18, 2015, in accordance with the terms of the Sale Order. *Id*. at A361–62.

*b. The Production Agreement*

In March 2011, SJPL, as Producer, and Old Thane, as Client, executed the Production Agreement calling for SJPL to create an infomercial for Old Thane's FlavorStone® Cookware product. *Id*. at A13. Importantly, for purposes of a Section 365 analysis, the parties do not dispute the Production Agreement's executoriness. *See*, *e.g.*, *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 509–10 (Bankr. D. Del. 2003), explaining:

> The Bankruptcy Court does not define 'executory contract,' but the accepted definition is that of Professor Countryman. 'An executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' *In re Columbia Gas Sys. Inc.*, 50 F. 3d 233, 239 (3d Cir. 1995) (*citing Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F. 2d 36, 39 (3d Cir. 1989)) . . . The time for determining if a contract is executory is when the bankruptcy petition is filed. *Columbia Gas*, 50 F. 3d at 240 (citations omitted).

Old Thane was bound to pay royalties (Production Agreement ¶¶ 4, 4.6), and SJPL was not to produce content for Old Thane's competitors while receiving such royalties. *Id.* ¶ 12.3. Additional executory components included the parties' ongoing confidentiality (*id.* ¶ 12) and indemnification terms. *Id.* ¶ 11.

Old Thane had authority to assign the Production Agreement but was obligated to provide SJPL with notice. *See id.* ¶ 15. If SJPL objected, Old Thane would remain secondarily liable. *Id.*[5] Old Thane, however, failed to provide SJPL any notice of the bankruptcy proceeding. Motion at p. 10; *see* Adv. D.I. 7 at pp. 7–9. In fact, SJPL did not learn of Old Thane's bankruptcy until receipt of a letter from New Thane concerning royalty adjustments (the "Royalty Adjustment Letter") approximately 6 weeks[6] after the alleged assignment of the Production Agreement. Motion at p. 10; *see* Exhibit at A71.[7]

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 157(c)(2). This is a "non-core" adversary proceeding, but it "relates to" a case under Title 11. *See id.* Venue is proper pursuant to 28 U.S.C. § 1410(3).

---

[5] In relevant part, Paragraph 15 provides:

. . . Client shall have the complete power, right and authority to assign any and all rights granted under this Agreement to any person, entity or company. Client agrees to notify Producer of any such assignment and agrees to remain liable for its obligations to Producer as set forth in this Agreement, unless the assignee assumes such obligations and Producer accepts such assumption, which acceptance shall not be unreasonably withheld. If Producer does not accept such assumption Client shall remain secondarily liable for financial obligations referred to herein. . . .

Exhibit at A22.

[6] SJPL claims ignorance of Old Thane's bankruptcy until "approximately 14 weeks after the Production Agreement was [allegedly] assigned." Motion at p. 10. However, the Royalty Adjustment Letter is dated approximately 6 weeks after the Closing. *See* Exhibit at A71.

[7] The Royalty Adjustment Letter—at best—put SJPL on inquiry notice of Old Thane's bankruptcy. *See* Motion at p. 10 (highlighting that the letter did not explicitly mention the bankruptcy proceedings or that "'[Old] Thane' was now 'New Thane'. . ."); *see also EBS Litig. LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302, 305 (3d Cir. 2002) (citing *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982)) ("'Inquiry notice' requires only notice of 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.'").

## STANDARD OF REVIEW

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed but early enough not to delay trial." A motion for judgment on the pleadings is a method to dispose of claims where material facts are undisputed and the only disputes concern questions of law. *In re Dex Media, Inc.*, 564 B.R. 208, 212 (Bankr. D. Del. 2017); *see Jang v. Boston Scientific Scimed, Inc.*, 817 F.Supp.2d 409, 413–14 (D. Del. 2011). The same standards as on a motion to dismiss apply, namely, the Court must accept as true the factual allegations in the complaint or counterclaim and review those allegations favorably to the party making them. *In re Dex Media, Inc.*, 564 B.R. at 212–13; *see Ferrell v. Cmty. Mgmt. Servs., LLC*, 2011 WL 1750452, at *1 (D. Del. May 6, 2011).

## DISCUSSION

Section 365 permits a trustee, or receiver in the case at bar, to do three things with an executory contract: (i) reject it, (ii) assume it or (iii) assume and assign it. Rejection renders the contract counterparty an unsecured creditor. *See* 11 U.S.C. §§ 365(g), 502(g). Assumption requires the trustee to cure all defaults or to provide "adequate assurance" that such defaults will be promptly cured. *See* 11 U.S.C. § 365(b)(1)(A). A party must submit a motion for court approval to properly assume or reject an executory contract. *See* Fed. R. Bankr. P. 6006, 9014 (detailing the procedures for filing a motion to approve

or reject an executory contract).[8] Importantly, "[a]ssumption is a prerequisite to assignment." Opp. at p.6; *see* 11 U.S.C. § 365(f)(2)(a) ("The trustee may assign an executory contract or unexpired lease of the debtor only if the trustee assumes such contract or lease in accordance with the provisions of this section."). The debtor has the burden to show that a contract is assumable and that Section 365 has been met (*see* 11 U.S.C. § 365(a); *In re Diamond Mfg. Co, Inc.*, 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994)), and the nondebtor party is generally required to prove the existence of defaults. *Id.* As it stands, "the proceeding is in a no-man's land where the executory contract[ was] neither definitively assumed nor definitively rejected." *In re Greater Se. Cmty. Hosp. Corp. I*, 327 B.R. 26, 30 (Bankr. D.D.C. 2005).

### Course of Conduct Cannot Substitute for the Bankruptcy Code's Assumption Requirements

New Thane advocates formalism and argues that because the strictures of Section 365 were not met, assumption and assignment of the Production Agreement did not occur. Opp. at pp. 5–8. SJPL, however, looks past such formalism and argues that the Sale Order, in conjunction with New Thane's post-Closing conduct, effectuated a valid assumption and assignment. *See* Motion at pp. 9–10; Reply at p. 1. The requirements of Section 365 and associated Rules of Bankruptcy Procedure warrant discussion to determine what, if any, were satisfied here.

---

[8] The Court addresses this point *infra*. However, because the instant case concerns assumption, the Court does not fully address rejection of an executory contract.

*a. No Formal Motion*

It is hornbook law that assumption and rejection of executory contracts requires filing a motion. *See* Fed. R. Bankr. P. 6006(a), 9014(a); 11 U.S.C. § 365(a); *see, e.g., Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989) ("[The Bankruptcy Rules of Procedure] plainly specify that a debtor in possession must file a formal motion;" finding documents entitled "Affirmation and Assumption of Executory Contracts" insufficient); *In re Gamma Fishing Co., Inc.*, 70 B.R. 949, 953 (Bankr. S.D. Cal. 1987) (noting an express order is required). Here, Old Thane failed to file a motion. Such failure in and of itself is fatal to a claim of assumption; however, the Court must address the notion of "implied" or "tacit" assumption.

Implied assumption is not a novel issue, but it is an unsettled one. *See, e.g., 10-6006 Collier on Bankruptcy* ¶ 6006.01, n. 16 (16th ed. 2017) (collecting implied rejection and assumption cases). A finding of implied assumption hinges on a parties' course of conduct, which is defined as "a series of acts over a period of time evidencing a continuity of purpose." *Corp. Commc'n Servs. of Dayton, LLC v. MCI Commc'ns Servs., Inc.*, No. 3:08-CV-046, 2009 WL 3756274, at *12 (S.D. Ohio Nov. 9, 2009), *aff'd sub nom. Corp. Commc'n Servs. of Dayton LLC. v. MCI Commc'ns Servs. Inc.*, 444 F. App'x 866 (6th Cir. 2011). Here, there are several pieces of evidence for the Court to consider.

*i. The Royalty Adjustment Letter*

SJPL contends that the Royalty Adjustment Letter supports finding for assumption because New Thane failed to explicitly disclaim assumption of the Production

Agreement, and that, rather, the letter "specifically recognized that SJPL and Thane had an agreement, pursuant to which New Thane would continue to pay royalties." Motion at p. 10; *see* Reply at p. 1. The Court disagrees. The letter makes clear that the Production Agreement was between "Thane," i.e., Old Thane, and SJPL. *See* Exhibit at A71. Similarly, the letter directs SJPL to "refer to *your* agreement . . . for more details." The Court finds New Thane's pronoun use indicative of its intentions and overarching view of the Production Agreement. If New Thane was of the mindset that, as an acquirer of substantially all of Old Thane's assets, the Production Agreement was an agreement between itself and SJPL, it would have been easy to include language referencing "our" agreement. However, the Court must give effect to New Thane's words, especially because they are "sophisticated purchasers with legal counsel." Reply at p. 2; *see also In re Am. LaFrance, LLC*, 461 B.R. 267, 275 (Bankr. D. Del. 2011) (considering the "sophistication of the parties" when gleaning a party's intent).

*ii. New Thane's District Court Briefing*

SJPL draws the Court's attention to a sentence found in New Thane's District Court briefing. *See* Reply at pp. 1, n.2, 6. The quote, in its original form, provides "SJP[L] does not dispute that the operative documents resulting from the Canadian and U.S. proceedings resulted in [New Thane] assuming the Production Agreement without pre-Closing Date liabilities." Judicial Notice Request at p. 5. SJPL argues that this serves as New Thane's "declaration" of assumption. *See* Reply at p. 1, n.2. The Court again disagrees. The sentence is merely argument by New Thane's counsel. First, the underlying claim is untrue. SJPL very much *does* dispute that the operative documents

resulting from the proceedings resulted in assumption *without pre-Closing liabilities. See generally* Motion; Reply; Adv. D.I. 5, 10, 12 and 43. After all, the bulk of SJPL's claim is that New Thane *is* liable for pre-Closing liabilities. If the underlying statement were true—and not merely argument—there would be no dispute before the Court. *See generally* Transfer Order (making no mention of New Thane's alleged "declaration" and specifically referring the matter to the Court to resolve the issue of assumption and, if found to be assumed, pre-Closing liabilities).

*iii. Post-Closing use of the Infomercial*

The record indicates that New Thane enjoyed the benefits of the Production Agreement post-Closing, which SJPL argues signifies assumption. *See* Reply at p. 2. The Court finds that continued use does not obviate the need for a formal motion to assume.

Finding that New Thane's continued use of the Production Agreement constituted assumption would validate the hazy doctrine of implied assumption. The overarching approach and logic taken in cases finding implied assumption, however, give the Court pause. Such cases provide that a debtor who clearly failed to adhere to the requirements under the Bankruptcy Code is still obligated (or not obligated if a court finds rejection occurred) to perform under a given contract or lease. That result is one borne of uncertainty, and uncertainty is a standard that the Court is uncomfortable perpetuating. Condoning such informal means of assumption will force courts to meddle in the fact-laden intricacies of transactions—sometimes well after the departure of a necessary party, such as the case here—to determine the debtor's, purchaser's or some third party's "true intention." *See In re Treat Fitness Ctr., Inc.*, 60 B.R. 878, 879 (B.A.P. 9th Cir. 1986) (emphasis

added) (finding Section 365 and Bankruptcy Rule 6006 "require that the debtor or trustee file a formal motion to assume, *thus overruling cases under the former Bankruptcy Act that required courts to judge whether words or deeds, often ambiguous at best, constituted an assumption or rejection of a lease or executory contract*"); *see also Richard Royce Collections, Ltd. v. N.Y. City Shoes, Inc. (In re N.Y. City Shoes, Inc.*), 84 B.R. 947, 960–61 (Bankr. E.D. Pa. 1988) (refusing to recognize implicit rejection of an executory contract based on "course of conduct"). While the facts of this case are undoubtedly unique, the Court must hold true and find that absent a motion, there is no assumption.

*b. No Notice*

Generally speaking, "a party seeking relief in bankruptcy court is not entitled to achieve a *fait accompli* with respect to the protectable interests of parties who did not receive notice prior to any loss with respect to their interest." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 510 (5th Cir. 2000) (quoting 7 *Collier* ¶ 1109.06[2]); *see* Reply at p. 4. It is also true that "Section 365 requirements are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption 'of which they had no notice and which they had no opportunity to contest.'" *Id*. at p. 3 (citing *Nat'l Gypsum co.*, 208 F.3d at 512 (citation omitted)). In fact, the Bankruptcy Code is "replete with provisions requiring proper notice" to interested parties (*id*. at 510), and Old Thane's failure to provide any notice connects to greater due process concerns. "In bankruptcy, due process requires that known creditors be provided with notice of the debtor's bankruptcy filing[.]" *In re Mariner Post-Acute Network, Inc.*, 303 B.R. 42, 46 (Bankr. D. Del. 2003). Although due process does not necessitate "notice of every step in a bankruptcy

proceeding (*id*.)," it does "mandate[] notice be given to a creditor whose property rights are being affected so that he may have his day in court." *In re Fauchier*, 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987). Although SJPL was not provided this fundamental right, it is not New Thane's fault. Rather, Old Thane, the now defunct debtor-seller, bore the burden of giving notice upon filing bankruptcy. *See Ellett v. Stanislaus*, 506 F.3d 774, 781 (9th Cir. 2007) (internal citation omitted) (noting when a debtor "'seeks to free itself of an obligation by means of a federal court judgment' . . . it is not unreasonable to place the burden on the debtors to ensure that their creditors received proper notice of their bankruptcy filing"). Inflicting the burden on New Thane is unsupported by caselaw.[9]

*c. No Cure*

Cure is a critical component of assumption. And, as conceded multiple times by the parties, SJPL did not receive a cure. *See* Reply at p. 4 ("[T]he requirements of Section 365, specifically the notice and cure provisions were ignored and disregarded."). The Seventh Circuit once noted "[t]he language and intent behind § 365 is decisive. . . .[, and

---

[9] SJPL notes that there is no authority for the proposition that an interested party who never received notice of the bankruptcy can, effectively, lose out on a statutory cure right. Reply at p. 6, n.5. In principal, SJPL relies on *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016), arguing that the Court found that the due process rights of interested parties were violated with regard to a "free and clear" sale pursuant to Section 363(f); and, notwithstanding the "free and clear" language prescribed in the court's order, the Second Circuit found that the transfer was not free and clear. New Thane, however, highlights that the facts in *In re Motors Liquidation Co.* were markedly different than the instant case. *See* Judicial Notice Request at pp. 7–8. In that case, the Court found that notice was required due to the debtors' specific knowledge of the pre-closing claims. *In re Motors Liquidation Co.*, 829 F.3d at 158–60. Here, it is unclear if SJPL ever alleged that Old Thane was aware of its pre-Closing liabilities to SJPL. *See* Judicial Notice Request at p. 7 (highlighting that the Complaint solely references SJPL's March 2016 notice to New Thane and no prior communications concerning the alleged pre-Closing liabilities). Nonetheless, Old Thane is not excused from giving notice to SJPL.

it] was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996). Further, "[i]f the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain." *Id.* (citing Senate Rep. No. 989, 95th Cong., 2nd Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845; H.R.Rep. No. 595, 95th Cong., 2nd Sess. 348 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304–05). The Seventh Circuit logically asserted that the term "full benefit of his bargain" refers to "the full amount due" under the contract or lease in question, as opposed to liabilities solely for future performance. *Id.* Here, SJPL did not receive the "full" benefit of its bargain, and pre-Closing liabilities remain outstanding. However, the fact remains that the Bankruptcy Code is clear—there simply *cannot* be an assumption without providing the necessary cure or adequate assurance of one. *See* 11 U.S.C. § 365(b)(1)(A)– (C). This baseline requirement was not met; thus, Old Thane did not assume the Production Agreement and hence could not assign it to New Thane.[10]

*d. Exceptions*

SJPL argues that the Court's Sale Order constituted a valid assumption and assignment of the Production Agreement. *See* Motion at p. 9; Reply at p. 1. Although executed in accordance with Section 365 and other Bankruptcy Code provisions (*see*

---

[10] Further, as argued by New Thane in the District Court (*see* Judicial Notice Request at p. 9), Section 365(b)(1)'s language is clear in that it specifically references the "trustee," which New Thane is not.

Exhibit at A28), it clearly does not meet the stringent requirements outlined above. However, assuming, arguendo, that the Sale Motion, which the Sale Order effectuated, constituted a formal assumption motion, it would be considered an assumption of multiple executory contracts and therefore subject to Rules 6006(e) and (f).

In relevant part, Rule 6006(e) provides that:

> The trustee shall not seek authority to assume or assign multiple executory contracts or unexpired leases in one motion unless: (1) all executory contracts or unexpired leases to be assumed or assigned are between the same parties or are to be assigned to the same assignee; . . . or (3) the court otherwise authorizes the motion to be filed.

Rule 6006(e)(1) is inapplicable given that the Purchase Agreement was a multiparty transaction, involving multiple assignees. *See* Exhibit at A146–47. Rule 6006(e)(3) is similarly inapplicable. The Court's entry of the Sale Order, while pursuant to Section 365, was not premised on the Sale Motion constituting an omnibus assumption or rejection motion. At no point does the record reflect that Old Thane intended the Sale Motion to perform such a function. However, again assuming, arguendo, that it was Old Thane's intention, such an omnibus motion would be subject to the requirements of Rule 6006(f), which provides:

> A motion to reject or, if permitted under subdivision (e), a motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall:
>
> (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
>
> (2) list parties alphabetically and identify the corresponding contract or lease;
>
> (3) specify the terms, including the curing of defaults, for each requested assumption or assignment;

(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

Rule 6006(f)'s conjunctive structure requires a party to satisfy all six requirements. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (internal citation omitted) (highlighting that statutes employing "or," as opposed to "and," are "'almost always disjunctive, that is, the words it connects are to be given separate meanings'"). Here, the Sale Motion fails all six requirements—(i) it does not conspicuously state the names of parties to the omnibus motion and reference the contracts to be included in the omnibus motion; (ii) it does not alphabetically list and identify the contracts; (iii) it makes no mention of curing of defaults; (iv) it does not specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment; (v) it is not numbered consecutively with other omnibus assumption or rejection motions; and (vi) it involved the sale of in excess of 100 executory contracts. The foregoing analysis reveals that the Sale Order—and any associated order or agreement it effectuated—falls short of satisfying the Bankruptcy Code's stringent standards.[11]

---

[11] Finding that the Sale Order did not constitute a valid assumption and assignment of the Production Agreement means the Court need not consider the issue of pre-Closing liabilities. *See* Motion at p. 14; Opp. at pp. 6–7.

Finding no assumption took place, the Court notes that New Thane may not have a contractual right to benefit from its post-Closing use of the Production Agreement. SJPL may, therefore, be entitled to damages for New Thane's post-Closing use. However, further discussion of the parties' relationship, including specific damages, is beyond this Court's jurisdiction. *See* 28 U.S.C. § 157(b)(2) (outlining examples of "core" proceedings under the Bankruptcy Code, which does not include nondebtor versus nondebtor adversary proceedings); *see also Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal citations omitted) (stating courts in this Circuit must consider if a proceeding "invokes a substantive right provided by title 11" or "could arise only in the context of a bankruptcy case").[12]

## CONCLUSION

The Court will deny the Motion, finding that Old Thane did not assume and assign the Production Agreement to New Thane. An order giving effect to its ruling will follow.


Dated: February 21, 2018

KEVIN GROSS, U.S.B.J.

---

[12] The Court does not find that the underlying dispute—a breach of contract claim—between SJPL and New Thane satisfies this Circuit's jurisdictional standard. *See In re Longview Power, LLC*, 515 B.R. 107, 114–15 (Bankr. D. Del. 2014) (surveying caselaw involving underlying state law claims and nondebtor parties and finding such disputes are non-core).